UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JUDITH L. PASIK,

       Plaintiff,

vs.                                  Case No.  3:12-cv-311-J-MCR

MICHAEL J. ASTRUE, Commissioner of
Social Security,

       Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the matter **REMANDED**.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") on January 13, 2010, alleging an inability to work since November 3, 2007, the amended onset date.  (Tr. 11).  The Social Security Administration ("SSA") denied this application initially on May 12, 2010, and on reconsideration on August 3, 2010.  Id.  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ"), which was held on June 16, 2011.  Id.  On August 25, 2011, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 11-19).  Plaintiff then filed a Request for Review

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 8).

by the Appeals Council, which was denied, thus making the ALJ's August 25, 2011 decision the final decision of the Commissioner. (Tr. 1-4). Plaintiff timely filed her Complaint in the United States District Court on March 21, 2012. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claims to be disabled since November 3, 2007, due to Hodgkin's Lymphoma, various back problems, anxiety, and depression. (Tr. 83, 111, 153, 158).

### B. Summary of Evidence Before the ALJ

Plaintiff was 48 years old on the date the ALJ's decision was issued. (Tr. 17). She has an eighth grade education and is able to communicate in English. Id. Plaintiff has past relevant work experience as a short order cook, waitress, school bus driver, and construction worker. Id. Plaintiff's medical history is detailed in the record and will be summarized here.[2]

As a brief summary regarding Plaintiff's physical ailments, Plaintiff has Hodgkin's lymphoma as well as several chronic back pain issues. From 1999 to 2010, Plaintiff frequented emergency rooms such as Shands Jacksonville, St. Luke's Hospital, Memorial Hospital, and Bartow Memorial Hospital seeking treatment for various physical problems, including but not limited to headaches, neck pain, chronic back pain, and Hodgkin's lymphoma. (Tr. 228-341; 472-482; 683-1040; 1041-1055; 1129-1179; 1237-1323; 1333-1354).

---

[2] Because Plaintiff's appeal deals with her mental impairments, the Court will focus its summary of the medical evidence primarily on those records addressing Plaintiff's mental impairments.

2

After being diagnosed with cancer, Plaintiff became increasingly anxious, as noted in several of her emergency room visits.  (Tr. 429; 434-35; 517; 663; 976-77; 1022; 1044; 1091; 1255; 1290; 1349; 1362; 1371).  A review of the medical records indicates Plaintiff did not see any treating doctors for her mental impairments, however, there is a Psychological Evaluation by a examining psychologist as well as a Psychiatric Review Technique and Mental Residual Functioning Capacity by a non-examining psychologist.  (Tr. 1103-1108; 1115-1127; 1329-1332).

On February 26, 2010, Plaintiff presented to Jessica Anderton, Psy. D., for a Psychological Evaluation.  (Tr. 1103-1108).  Dr. Anderton noted Plaintiff's demeanor as quite irritable and her social skills as somewhat poor due to emotionality.  (Tr. 1105).  Further, Dr. Anderton found Plaintiff's affect to be dysphoric and occasionally hostile and her mood was dysthymic and irritable.  Id.  Additionally, Dr. Anderton opined Plaintiff's attention and concentration were "mildly impaired due to emotional distress." (Tr. 1106).

Vocationally, Dr. Anderton found Plaintiff could follow and understand simple directions and instructions and perform simple tasks independently, but her ability to perform complex tasks was impaired.  (Tr. 1106-07).  Dr. Anderton further found Plaintiff had difficulty with maintaining attention and concentration, which undermined her ability to learn new tasks or make appropriate decisions.  (Tr. 1107).  Also, Dr. Anderton opined Plaintiff had "difficulty relating adequately with others and significant difficulty in appropriately dealing with stress."  Id.  Lastly, Dr. Anderton opined Plaintiff "would be highly unlikely to maintain a regular schedule."  Id.  Dr. Anderton's diagnosis included:

Axis I:   Depressive disorder, NOS

3

Anxiety disorder, NOS
Axis II:  None
Axis III: History of serious neck injury and chronic pain
resulting from that.
Stage 2 Hodgkin's lymphoma.

Id.

On April 1, 2010, Theodore Weber, Psy. D., completed a Psychiatric Review Technique form. (Tr. 1115-1128). Dr. Weber's diagnosis included depressive disorder NOS and anxiety disorder NOS. (Tr. 1118, 1120). In relation to Plaintiff's functional limitations, Dr. Weber opined Plaintiff suffered from mild restrictions of activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence, or pace. (Tr. 1125). Further, Dr. Weber noted Plaintiff's anxiety attacks began when she was diagnosed with cancer. (Tr. 1127). Dr. Weber also completed a Mental Residual Functional Capacity form. (Tr. 1329-1332). Dr. Weber found Plaintiff was moderately limited in her ability to: (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (5) accept instructions and respond appropriately to criticism from supervisors, and (6) set realistic goals or make plans independently of others. (Tr. 1329-30). Finally, Dr. Weber noted Plaintiff's history of anxiety and depression related to her cancer and observed that she did not have an impairment in adaptive functioning. (Tr. 1331).

**C.**   **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 416.920.  First, if a plaintiff is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 416.920(a)(4)(I).  Second, if a plaintiff does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).   Third, if a plaintiff's impairments do not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iii).  Fourth, if a plaintiff's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  Fifth, if a plaintiff's impairments (considering her Residual Functioning Capacity ("RFC"), age, education, and past work) do not prevent her from doing other work that exists in the national economy, then she is not disabled.  20 C.F.R. § 416.920(a)(4)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 13, 2010, the application date.  (Finding 1, Tr. 13).  At step two, the ALJ found Plaintiff had severe impairments: Hodgkin's lymphoma,

status post chemotherapy and proton beam therapy, cervical spine herniated nucleus pulposis, lumbar spine spondylolisthesis, depression, and anxiety.  (Finding 2, Tr. 13).  At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4.  (Finding 3, Tr. 13).  The ALJ specifically noted "[d]espite her combined impairments, the medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."  (Tr. 13).

The ALJ further determined Plaintiff retained the RFC to perform light work with limitations.  (Tr. 14).  Specifically, the ALJ found Plaintiff was able to:

> perform light work . . .  except she is limited to occasional pushing and pulling, climbing, balancing, stooping, kneeling, crouching, and crawling, only occasional reaching overhead bilaterally, and must avoid concentrated exposure to hazards, machinery and heights.  Mentally, [Plaintiff] is able to understand, maintain concentration, and perform at a consistent pace for simple instructions, but would have difficulty with more detailed instructions.  [Plaintiff] is also able to complete simple tasks/work procedures, and make work decisions but would have difficulties with maintaining attention and concentration for extended periods and carrying out detailed instructions.  [Plaintiff] is also able to cooperate and be socially appropriate, but would have difficulties accepting criticism from supervisors.  Finally [Plaintiff] would be able to react/adapt appropriately to the work environment but would have some difficulties accepting criticism from supervisors.[3]

---

[3]The Court agrees with the Commissioner that this last sentence is most likely a typographical error meant to be "difficulty setting realistic goals."  Both the hypothetical question to the VE as well as Dr. Weber's opinion indicate this language following her ability to react and adapt in the work environment.  As the Court is remanding this case for other reasons, the ALJ will have the opportunity to revise this sentence if necessary.

(Finding 4, Tr. 14).  In making this determination, the ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence."  (Tr. 15).  The ALJ noted he gave great weight to the "DDS Physical Residual Functional Capacity Assessment at 17F and the DDS Mental RFC Assessment at 21F, which are consistent with the ALJ's above findings."  (Tr. 14).  Additionally, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible and would not preclude light work."  (Tr. 17).

At step four, during the hearing, the ALJ utilized the testimony of a vocational expert (the "VE") and determined Plaintiff's current functional capacity rendered her unable to perform any of her past relevant work.  (Finding 5, Tr. 17).  The ALJ then asked the VE whether any jobs existed in the national economy for an individual of Plaintiff's age, education, past relevant work experience, and RFC.  The VE determined Plaintiff would be able to work as a cafeteria attendant, cleaner, document preparer, and lens inserter.  (Tr. 18, 57).  Accordingly, at step five, the ALJ determined that based on Plaintiff's age, educational background, work experience, and residual functional capacity, Plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy."  (Tr. 18).  Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  (Finding 10, Tr. 18-19).

III.    **STANDARDS OF LAW**

A.    **The Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence.  Richardson v.

Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact

are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla – i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  Foote v.

Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835,

838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

B.    **Issues on Appeal**

Plaintiff argues two issues on appeal.  First, Plaintiff asserts the ALJ erred in evaluating the findings and opinions of the examining physician, Dr. Anderton.[4]   (Doc. 15, pp. 7-9).  Additionally, Plaintiff argues the ALJ erred in posing a hypothetical to the VE that failed to include all of the limitations established by Dr. Anderton.  (Doc. 15, p. 8).  The Commissioner responds that the decision of the ALJ is based on substantial evidence because the RFC adopted by the ALJ accounted for much of Dr. Anderton's opinion and because the ALJ properly evaluated the record as a whole to establish Plaintiff's mental RFC.  (Doc. 16, pp. 5-8).  Additionally, the Commissioner takes the position that the hypothetical posed to the VE was not required to include all the limitations imposed by Dr. Anderton to the extent they were inconsistent with the RFC and the record as a whole.  (Doc. 16, p.10).

 In the present case, the record does not include any medical opinion from a treating doctor regarding Plaintiff's mental impairments.  Rather, the record contains the

---

[4] In the Preliminary Statement of her brief, Plaintiff argues the ALJ failed to consider the complete opinions of Plaintiff's treating and examining physicians and goes on to list six different doctors.  (Doc. 15, p. 2).  However, in the Argument section, Plaintiff only specifically discusses the opinions of Dr. Anderton and provides no legal authority regarding the other five doctors' opinions.  (Doc. 15, p. 7).  This is not sufficient and the Court will not engage in speculation as to Plaintiff's arguments regarding these issues.  See Outlaw v. Barnhart, 197 F.App'x. 825, 828 n.3 (11th Cir. 2006) (plaintiff waived issue regarding physical exertional impairments despite listing issue in brief where plaintiff "did not elaborate on this claim or provide authority about this claim") (citing Cheffer v. Reno, 55 F.3d 1517, 1519 n. 1 (11th Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim)); Rowe v. Schreiber, 139 F. 3d, 1381, 1382 n. 1 (11th Cir. 1998) (noting in the absence of an argument, an issue is deemed abandoned); Callahan v. Barnhart, 186 F. Supp. 2d 1219, 1230 n. 5 (M.D. Fla. 2002) (noting that issue raised only in heading of a brief without any further elaboration or factual support is deemed waived).  Accordingly, the Court will not consider the issues not fully briefed by Plaintiff's counsel.

opinion of Dr. Anderton, the sole examining mental health professional.  Dr. Anderton found Plaintiff's demeanor quite irritable during her examination and noted Plaintiff's social skills and overall presentation were poor due to emotionality.  (Tr. 1106).  Dr. Anderton opined Plaintiff's attention and concentration were mildly impaired because of emotional distress.  Id.  Further, Dr. Anderton found Plaintiff's insight to be fair and judgment to be fair to good.  Id.  Vocationally, Dr. Anderton determined Plaintiff could follow and understand simple directions and instructions and perform simple tasks independently, but would have difficulty performing complex tasks.  (Tr. 1107).  Also, Dr. Anderton noted Plaintiff had difficulty maintaining adequate attention and concentration.  Id.  Dr. Anderton opined Plaintiff would be highly unlikely to maintain a regular schedule and her ability to learn new tasks was undermined by very poor concentration.  Id.  Finally, Dr. Anderton opined Plaintiff had difficulty relating to others or with stress.  Id.

While it is clear the ALJ considered Dr. Anderton's opinions as he discussed them at length in his decision (Tr. 16-17), it is also clear that he rejected portions of her opinions.  Specifically, the ALJ rejected Dr. Anderton's opinions that Plaintiff was limited in her ability to maintain a regular schedule, Plaintiff's inability to handle stress adequately, and Plaintiff's inability to learn new tasks due to poor concentration. (Tr. 14).  The ALJ did not provide any reasons for his decision to reject these portions of Dr. Anderton's opinions other than stating that Plaintiff had not sought additional mental health treatment.  (Tr. 16).

Moreover, it is clear that Dr. Anderton's opinions were substantially probative.

During the hearing, the ALJ posed a number of hypothetical questions to the VE.  First,

the ALJ posed the following hypothetical:

> Let's assume we have an individual who is now 48-years of
> age and has completed the eighth grade . . . a poor ability to
> read, write, and use numbers.  Let's assume the past
> relevant work history [of a short order cook, waitress, school
> bus driver and construction worker] . . .  Let's assume the
> individual can occasionally lift 20 pounds, frequently lift ten
> pounds, same for carrying.  Can stand for six hours, walk for
> six hours, and sit for six hours in an eight-hour day with
> normal breaks, unlimited pushing and pulling, occasional for
> other postural activities including stooping, crouching,
> crawling, kneeling, balancing, and climbing stairs and
> ladders.  Limited reaching.  Only occasional reaching
> overheard bilaterally.  This person needs to avoid
> concentrated exposure to hazards, including machinery and
> heights because of the primary physical restriction.
>
> Let's assume the individual has moderate restrictions in the
> ability to understand, remember, and carry-out detailed
> instructions.  Complete a normal workday and work week
> without interruption from psychologically based symptoms
> and to perform at a consistent pace with an unreasonable
> number and length of rest periods.  To accept instruction and
> respond appropriately to criticism from supervisors.  And, to
> set realistic goals and make plans independently of others. .
> . .  Let's assume the individual would be able to understand
> and remember simple instructions.  Would have difficulty
> with detailed instructions.  Would be able to complete simple
> tasks, work procedures, and be able to make work
> decisions, but with difficulty in maintaining attention and
> concentration for extended periods.  Would be able to
> cooperate and be socially appropriate, but would have
> difficulty accepting criticism from supervisors. . . . Would be
> able to react appropriately to the work environment, but with
> some difficulty setting realistic goals.

(Tr. 54-56).  The VE responded that there were jobs available to such a hypothetical

individual including: cafeteria attendant, document preparer, and lens inserter.  (Tr. 57).

11

The ALJ then asked the VE whether Plaintiff would be able to perform any of those jobs with the following limitations:

> Can follow simple directions and instructions.  Can perform simple tasks.  Ability to perform complex tasks independently is impaired.  Difficulty maintaining attention and concentration.  Highly unlikely to maintain a regular schedule. . . . [V]ery poor concentration.  Ability to make decisions is also undermined.  And, this person has difficulty relating adequately with others.  Has significant difficulty appropriately dealing with stress.

(Tr. 58).  The VE indicated that the combination would make even unskilled work difficult to perform adequately over time.  (Tr.58).  The VE also indicated that this would be a person that "would be a marginal employee and would probably not be able to maintain employment due to not coming to work on time and not concentrating adequately."  (Tr. 58).  The VE noted "even unskilled work does require a level of concentration."  (Tr. 59).

The ALJ is required to consider all of the evidence in the claimant's record when making a disability determination.  See 20 C.F.R. § 416.920(a).  In addition, the ALJ must state the weight afforded to the evidence considered.  Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985).  Specifically, the judge "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence."  Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990).  Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Cowart

v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)).  Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected."  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Here, it is clear that Dr. Anderton's opinions regarding Plaintiff's limitations, particularly her difficulty with maintaining the schedule coupled with her poor attention and concentration, are significantly probative.  As the VE testified, if the ALJ had accepted Dr. Anderton's opinion regarding Plaintiff's limitations, Plaintiff would be considered disabled.  Accordingly, the ALJ was, at a minimum, required to explain why he rejected Dr. Anderton's opinion.  Therefore, the undersigned will remand the case to the ALJ, with the instruction that the ALJ shall review Dr. Anderton's opinions and explain in detail the amount of weight afforded to her opinions and provide adequate explanation as to why any of these opinions are rejected.

## IV.   CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to enter judgment pursuant to sentence four, 42 U.S.C. 405(g) **REVERSING** Commissioner's decision and **REMANDING** this matter with instructions to (1) review Dr. Anderton's Psychological Evaluation and explain in detail the amount of weight afforded to it; (2) if necessary, provide an explanation for any of Dr. Anderton's opinions rejected; and (3) conduct any other proceedings deemed appropriate.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby

granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act**.

**DONE AND ORDERED** at Jacksonville, Florida, this __28th__ day of January, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

14